UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| LEON PERRY, | ) | |
|---|---|---|
| Movant, | ) | |
| v. | ) | Case No. CV610-074 |
| | ) | CR606-026 |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Leon Perry moves for 28 U.S.C. § 2255 relief. (Doc. 1.[1]) For the following reasons, his motion should be **DENIED**.[2]

## I. BACKGROUND

A federal grand jury charged Perry with conspiracy to possess with intent to distribute 50 grams or more of crack cocaine and 5

---

[1] Unless otherwise noted, citations are to the docket in Perry's civil case, CV610-074. "Cr. doc." refers to documents filed under his criminal case, CR606-026. Additionally, page references are to the CM/ECF screen page rather than the referenced document's own internal pagination.

[2] Perry also moved for leave to proceed *in forma pauperis*. (Doc. 2.) His motion is **DENIED** as moot, since "[n]o filing fee is required to file a § 2255 motion, only to appeal its denial. *See, e.g., Anderson v. United States*, 241 F. App'x 625, 627 (11th Cir. 2007)." *Brown v. United States*, 2009 WL 307872 at * 1 (S.D. Ga. Feb. 9. 2009); *United States v. White*, 2009 WL 4730621 at * 3 (N.D. Fla. Dec. 9, 2009).

kilograms of powder cocaine. (Cr. doc. 1.) He pleaded guilty to a lesser included charge -- conspiracy to possess a quantity of crack cocaine and powder cocaine. (Cr. docs. 603, 675, & 883 (plea agreement).) The trial judge accepted Perry's plea and sentenced him to 240 months' imprisonment. (Cr. doc. 675.) Perry challenged the sentence on appeal, but the Eleventh Circuit affirmed, finding no error.[3] *United States v. Perry*, 332 F. App'x 595 (11th Cir. 2009). Thereafter, he filed the present § 2255 motion, asserting the following grounds for relief:

(1) defense counsel was ineffective in permitting him to plead guilty to conspiracy with intent to distribute crack and powder cocaine;

(2) defense counsel was ineffective in failing to negotiate a plea bargain containing a cooperation agreement providing for a downward sentencing departure;

(3) the sentence should be vacated because one of the prior convictions used to enhance the sentence was the result of an involuntary guilty plea; and

---

[3] Specifically, Perry argued that: (1) the government breached his plea agreement by not recommending a three-level sentencing reduction for acceptance of responsibility; (2) the district judge failed to comply with Fed. R. Crim. P. 11 by not informing him that he faced a maximum supervised release term of life; and (3) his sentence was both procedurally and substantively unreasonable based upon the 18 U.S.C. § 3553(a) sentencing factors. *Perry*, 332 F. App'x at 596.

2

(4) defense counsel was ineffective for failing to raise the government's breach of the plea agreement by failing to recommend a two-level sentencing reduction for acceptance of responsibility.

(Doc. 1 at 4-5; doc. 7 at 2.[4])

## II. ANALYSIS

The Court will consider Perry's claims out of order, addressing first his ineffective assistance of counsel claims, Grounds 1, 2, and 4. (Docs. 1, 3, & 7.) Next, the Court will consider his Ground 3 claim that one of the enhancing convictions was invalid. (Docs. 1 & 3.)

### A. Grounds 1, 2, and 4

In analyzing Perry's three ineffective assistance of counsel claims the Court is guided by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which created a two-part test for determining whether counsel performed ineffectively. First, the movant must demonstrate that his

---

[4] Perry moved to amend his motion to add the fourth ground. (Doc. 7.) The government does not object. (Doc. 8.) Accordingly, the motion to amend is **GRANTED**. Ground 4 itself is raised in a separate filing styled as a motion "to grant the petitioner's motion." (Doc. 5.) Since the motion to amend is granted and Ground 4 is thus incorporated into Perry's § 2255 motion, his motion "to grant the petitioner's motion" (*id.*) is **DENIED** as moot.

3

attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." 484 U.S. at 687. Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. *Id.*

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. It is generally appropriate to look to counsel's performance throughout the case in making such a determination. *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986). The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Indeed, Perry must show that "'no competent counsel would have taken the action that his counsel did take.'" *Ford v. Hall*, 546 F.3d 1326, 1333

(11th Cir. 2008), *quoting Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

Under the prejudice prong, Perry must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman*, 477 U.S. at 375; *Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983).

i. **"Uncounseled" Plea**

In Ground 1, Perry contends that his defense counsel, James L. Wiggins, was ineffective for permitting him to plead guilty to conspiracy, since his involvement amounted to no more than purchasing small amounts of powder cocaine for personal use. (Doc. 1 at 4.)

Since Perry's claim attacks the plea itself, the Court must apply a slightly modified version of the *Strickland* ineffectiveness test explained above.[5] In such cases, the Court is guided by *Hill v. Lockhart*, 474 U.S.

---

[5] One who enters an unconditional plea of guilty "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred

52 (1985). Where a movant enters a plea of guilty and then collaterally challenges it as involuntary due to constitutionally deficient representation, he must first demonstrate that his attorney's performance was deficient, which requires a showing that counsel's advice regarding the plea was outside the "range of competence demanded of attorneys in criminal cases." *Id.* at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)); *see Tollett*, 411 U.S. at 267. Then he must demonstrate that the defective performance prejudiced the plea process to such a degree that the plea cannot be trusted. *Hill*, 474 U.S. at 59. To meet the prejudice prong in this context, Perry must show that there is a reasonable probability that but for counsel's errors he would not have pled guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59.

---

prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (emphasis added). That is, "[a] defendant's plea of guilty, made knowingly, voluntarily, and with the benefit of competent counsel, waives all non-jurisdictional defects in that defendant's court proceedings." *United States v. Pierre*, 120 F.3d 1153, 1155 (11th Cir. 1997) (citing *United States v. Yunis*, 723 F.2d 795, 796 (11th Cir. 1984)); *see also United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir. 2003); *United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986) (per curiam). That bar applies both on appeal and on collateral attack. *See United States v. Broce*, 488 U.S. 563 at 569 (1989). Hence, Perry may only attack the plea itself.

Although, Perry pled guilty to conspiracy to possess with intent to distribute crack and powder cocaine, (Doc. 1 at 1), he now argues that the "undisputed evidence" showed that he merely purchased powder cocaine for personal use.[6] (Doc. 3 at 2.) "Indeed, there was no evidence that I possessed drug dilutants, scales, drug packing paraphernalia, large quantities of money, or other items that would support the inference that I intended to distribute the cocaine, rather than consume it myself." (*Id.*) On appeal, he learned for the first time from his new attorney "that my conduct did not amount to conspiracy." (*Id.* at 3.) "Had I known, I never would have agreed that I was guilty of conspiracy, nor would I have entered into a guilty plea to the offense. Instead, I would have insisted on either going to trial, or pleading guilty to simple possession." (*Id.*)

---

[6] He also claims that he had no involvement whatsoever with crack cocaine. (Doc. 3 at 2.) It does not matter that Perry was not directly involved with the sale of crack cocaine. A person convicted of conspiracy need not know of or participate in *all* details of the conspiracy. It is enough that he knew the essential nature of the conspiracy and manifested his agreement to participate in it. *United States v. Cooper*, 203 F.3d 1279, 1286 (11th Cir. 2000); *United States v. Payne*, 750 F.2d 844, 859 (11th Cir. 1985). Here, Perry conspired to distributed cocaine. His participation in all details of the conspiracy is a question for sentencing, where the district judge must assess each defendant's level of culpability based upon their participation in the offense. *See, e.g., United States v. Baptiste*, 335 F. App'x 15, 19-20 (11th Cir. 2009).

Perry, while framing this as an ineffectiveness claim, suggests that the evidence against him was insufficient to convict him of conspiracy. The issue here, however, is whether Perry's attorney offered faulty plea advice, not whether the evidence against him was sufficient to sustain the conviction. Indeed, a sufficiency argument is entirely nonsensical under these facts. Perry *admitted* on the record that he was a co-conspirator and had distributed powder cocaine to friends, both at his Fed. R. Crim. P. 11 change of plea hearing[7] and in

---

[7] During Agent Tinsley's examination at the plea hearing, he explained that

> Mr. Leon Perry was a known distributer for the [Julias Pinkston drug] organization. For example, in [the] January of 2006 time period, he obtained quantities of cocaine hydrochloride from Ms. Stephanie Collins as well as Ms. CeCi Smith at the direction or through Mr. [] Julius Pinkston himself. He also distributed cocaine to Aaron Mikell on one occasion.
>
> He was primarily partnered up with [] another codefendant, Ramon Kelly.

(Cr. doc 776 at 76-77.) The Court then questioned Perry about the testimony:

> THE COURT: Mr. Perry, did you hear the testimony of the Agent who is still on the witness stand?
>
> DEFENDANT PERRY: Yes, I did.
>
> THE COURT: Was his testimony truthful insofar [as] you know?
>
> DEFENDANT PERRY: Yes, sir.
>
> THE COURT: Is there a *but* to that?

8

his plea agreement, where he acknowledged that he did "knowingly and intentionally combine, conspire, and agree" with co-defendants "to . . .

---

> DEFENDANT PERRY: Yes, sir. I don't recall, you know, the accurate date so much as it was back in January of 2006. I'm sorry. yes, 2006. I admit, you know, that I did purchase, but it wasn't to distribute. I had a problem, you know. It wasn't to purchase to distribute.
>
> THE COURT: How much was there in this amount?
>
> THE WITNESS: Sir, back then it was on several different occasions between a quarter ounce and two ounces of cocaine hydrochloride, powder.
>
> THE COURT: Did you ever give any away to anybody?
>
> DEFENDANT PERRY: No, sir. The thing was that I had going on about myself around the time that I stated, you know, I remember in March. But I don't recall back in January. But, you know, I would purchase it among me and other friends, you know.
>
> THE COURT: You were purchasing it for other friends.
>
> DEFENDANT PERRY: For myself and other friends who also used it.
>
> THE COURT: Well, that would meet the distributing part.
>
> DEFENDANT PERRY: Okay.
>
> THE COURT: With that, is his testimony accurate insofar as you are concerned?
>
> DEFENDANT PERRY: Yes, sir. Yes, sir.
>
> THE COURT: Did you still wish to plead guilty pursuant to your plea agreement?
>
> DEFENDANT PERRY: Yes, sir.

(Cr. doc. 779 at 80-81.)

possess with intent to distribute, and to distribute, 50 grams or more of cocaine base (crack) and 5 kilograms or more of cocaine hydrochloride (powder), Schedule II controlled substances. . . ." (Cr. doc. 883 at 6-7.) Perry's "solemn declarations" before the district judge "carry a strong presumption of verity" and rightly constitute a "formidable barrier" for him to overcome in these collateral proceedings. *Cross v. United States*, 2009 WL 211418 at * 8 (S.D. Ga. Jan. 27, 2009) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Indeed, "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely." *United States v. Stitzer*, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986). The only way Perry could conceivably undermine his sworn declarations, then, would be to show both that he swore falsely and that he did so due to some failing by his attorney. He has not come close to meeting that burden.

Perry did not plead guilty based on some fundamental misstatement of the law put forward by his attorney. His argument, that the plea cannot be trusted because his attorney should have realized that the evidence was insufficient to convict him of conspiracy,

is fallacious. Perry admitted, and the record conclusively shows,[8] that he distributed cocaine to his friends. Accordingly, the Court is satisfied

---

[8] The record clearly establishes -- outside of his admission -- that Perry *did* distribute cocaine. At sentencing, he did not dispute the following facts drawn from the Presentence Investigation Report ("PSI"). The government placed a wiretap on Stephanie Collins's phone beginning on June 1, 2006. On June 2, Perry (by phone) contacted Collins to obtain a "whole one" -- one ounce of cocaine. (PSI ¶ 6.) She was a little short, so she agreed to "give him what she had for $650." (*Id.*) On June 10, he told Collins he needed to purchase a "single," then later said that he intended to split a "four-way" with another person, which the government explained was 4.5 ounces of cocaine. (PSI ¶ 8.) One of his friends, Ramon Kelly, met Collins with $3700, which came up short, but they worked out a compromise, allowing Perry to owe Collins $500. (*Id.*) On June 14, Collins asked him for the rest of the money from the earlier deal. Perry promised to straighten it out, then, the next day, he asked for another ounce of cocaine. (PSI ¶ 9.) Two days later, Perry requested yet another "whole one." (*Id.*) Finally, on June 23, he requested another 4.25 ounces. (PSI ¶ 10.)

Co-conspirator Julius Pinkston, Stephanie Collins's father, told interviewing agents that he had sold Perry between one-half and full ounces of cocaine, but that he usually worked with Collins. (PSI ¶ 11.) Nicole Collins, Stephanie's cousin, reported that Perry and Kelly regularly purchased quarter- to half-ounce quantities of cocaine from Stephanie but occasionally purchased full ounces. (PSI ¶ 12.) Co-defendant Bob Aaron Mikell told agents that he purchased an ounce of cocaine from Perry on one occasion. (PSI ¶ 13.) Stephanie Collins told agents that Perry and Kelly purchased 4.5 ounces from her on one occasion, and from April until June of 2006, he regularly purchased quarter- to half-ounces of cocaine per week and occasionally also purchased cocaine from Julius and Kimbley Pinkston. (PSI ¶ 14.) According to the PSI, Perry received at least 15 ounces -- nearly half a kilogram -- of cocaine from Collins during June 2006 *alone*. (PSI ¶ 15; PSI ¶¶ 6-10.)

As discussed in note 7, *supra*, Perry admitted to dividing that cocaine up with his friends. Based upon his salary, he most certainly wasn't giving it away for free. His earnings over that time period averaged around $20,000 per year, yet he managed to purchase many thousands of dollars' worth of cocaine in June alone. (PSI ¶ 48.) In other words, there was more than enough evidence for a jury to infer that he actively distributed cocaine. While Perry may not have distributed the cocaine *for profit*, the record shows that, at the very least, he was a purchaser for an improvised cocaine cooperative. Perry, of course, disputes that he ever sold cocaine

11

that counsel did not perform deficiently by "allowing" Perry to plead to the conspiracy charge despite a supposed paucity of evidence against him.

Nor can Perry show any prejudice from counsel's alleged failure to explain the nature of the charges to Perry. The record flatly contradicts Perry's contention that he did not *understand* what was required to prove a conspiracy charge. At the change of plea hearing, the presiding judge explained:

> A *conspiracy* is a partnership in criminal purposes. In a conspiracy, each member of the conspiracy becomes the agent of the other people in the conspiracy, and even, many times, they don't even know their names or never have seen them. It is sufficient of a person voluntarily, to become a member of the conspiracy, acts knowingly and in some way voluntarily and willfully to advance the purpose of the conspiracy with the intent to distribute cocaine hydrochloride or crack cocaine.
>
> The legal definition here of the conspiracy and the essential elements; that is, what the government must prove beyond a

---

to Mikell. Too, he insists that it was really all for personal use -- just a bunch of addicts pooling their money. (Doc. 3 at 2-3.) According to Perry, then, "distribution" means "selling for profit." Merely dividing it up with one's friends doesn't count. He cites no authority supporting this remarkable proposition, and his reliance upon *United States v. Hardy*, 895 F.2d 1331, 1334 (11th Cir. 1990), is misplaced. In that case, the defendant had never possessed more than an eighth of an ounce at a time and simply provided some to his guests for free. *Id.* at 1333. Here, Perry purchased *far* more cocaine with regularity. Indeed, on at least one occasion he purchased more than 32 times that amount. And a juror would likely infer that he sold quite a bit of it to support his own habit.

> reasonable doubt is first your identification must be proven. That you are the person that was named in the indictment. All of these proofs must be beyond a reasonable doubt.
>
> It is explained in here that two or more persons in some way or manner came to a mutual understanding to try to accomplish a common and unlawful plan as changed in the indictment. And that you, knowingly and willfully, joined in it knowing the unlawful purpose of the plan.

(Cr. doc. 779 at 47-48.) Next, the judge asked Perry whether he understood the charge:

> THE COURT: Do you know what you are pleading guilty to when I say conspiracy, Mr. Perry?
>
> DEFENDANT PERRY: Yes, sir.

(*Id.* at 47-48.) Hence, Perry knew at the time that he entered his plea that the government must prove beyond a reasonable doubt that he agreed with others to distribute cocaine.

Perry has not come close to showing that his plea attorney performed deficiently. There was more than enough evidence to convict him of the crime, so his attorney did nothing wrong by "allowing" him to enter his plea. Moreover, the record refutes his assertion that he was not aware of the nature of the charges -- they were explained to him in detail by the district judge. Even if counsel performed deficiently by

13

failing to adequately explain the conspiracy charge, Perry cannot show that he was prejudiced by such a failure. Ground 1, then, should be denied.

### ii. Plea Bargaining

Perry next contends that his attorney was ineffective for failing to obtain a promise from the government that it would seek a downward departure pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. (Doc. 1 at 4; doc. 3 at 4.) The claim is speculative in the extreme. Perry has not suggested that the government would have accepted such a bargain. Indeed, the government insists that it would not have. Perry was not cooperative and could not "seem to keep his own story straight." (Doc. 6 at 10.) "Perry's admission[] and then denial of his criminal conduct, even if he were cooperative, compromise[d] his credibility for purposes of cooperation." (*Id.*)

Moreover, contrary to Perry's assertion, not all defendants obtained such an agreement. While he states that Stephanie Collins and Kimbley Pinkston received downward departures (doc. 3 at 4), the sentencing adjustments were not negotiated in their plea agreements.

In fact their plea agreements were identical in all respects to Perry's. (Cr. Doc. 779 at 63.) The government promised them, as it did Perry, that it would "[a]dvise the Court of the extent and value of any information, cooperation, or assistance in the investigation and prosecution of others provided by the defendant, and to consider whether such cooperation qualifies as 'substantial assistance' pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1." (Cr. doc. 883 at 2.) Any departure was addressed at sentencing, not pre-plea.

Perry knew that any cooperation-based sentencing departure depended upon the government's assessment of his cooperation. (Cr. Doc. 779 at 63-70.) And the government explained at the Rule 11 hearing that his agreement was identical in all respects with the other three co-defendants entering pleas that day. (*Id.*) He cannot now argue that his attorney was ineffective for negotiating the exact same plea agreement reached by his co-defendants. And he would be hard pressed to show prejudice, since the sentencing judge need not grant the

government's motion for a downward departure even had the promise been made.[9]

### iii. Breach of Plea Agreement

In his final ineffectiveness claim, Perry argues that counsel was ineffective at sentencing for failing to raise the government's breach of the plea agreement. (Doc. 8.) Specifically, counsel should have argued that the government breached its agreement to recommend a three level guidelines reduction for acceptance of responsibility. (Doc. 7 at 5.) The government argues that this claim is barred, since it merely repackages a claim raised before the Eleventh Circuit. (Doc. 8 at 3.) There, Perry argued that the government breached his plea agreement by failing to recommend an acceptance of responsibility reduction. *Perry*, 332 F.

---

[9] To the extent his claim involves counsel's failure to obtain a departure *at sentencing*, it still fails. Perry has not offered any facts even remotely suggesting that the government would have moved for a downward departure or that the Court would have granted the motion. His self-serving and conclusory claims do not merit a hearing, much less § 2255 relief. *See Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) (*citing Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991)); *see also United States v. Laetividal-Gonzalez*, 939 F.2d 1455, 1465 (11th Cir. 1991) (no hearing required where movant's allegations fail to satisfy the prejudice prong of the Strickland test); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (no hearing required on claims "which are based on unsupported generalizations"); *Rodriguez v. United States*, 473 F.2d 1042, 1043 (5th Cir. 1973) (no hearing required where petitioner alleged no facts to establish truth of his claims beyond bare conclusory allegations).

App'x 596-97. The Eleventh Circuit rejected the claim. *Id.* Of course, the Court of Appeals rejected the claim on the merits, while here it is raised on ineffectiveness grounds. Ineffective assistance of counsel was not an available theory on direct review, so, out of an abundance of caution, the Court rejects the government's contention that this claim is barred. *See United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (barring reassertion of a rejected claim on a different but *previously available* legal theory).

While *Nyhuis* may not apply directly, the Court of Appeals *has* determined that the government did not breach the plea agreement by failing to recommend a departure for acceptance of responsibility. The government agreed to recommend credit for acceptance of responsibility only where the defendant had fully complied with the terms of his pretrial release. (Cr. doc. 883 at 3.) Perry did not. He tested positive for drug use after being granted bond. (Cr. doc. 768 at 6-7.) Since the government did not breach the agreement, counsel did not perform deficiently for failing to pursue the matter at sentencing.[10] *See*

---

[10] Counsel did seek an adjustment for acceptance of responsibility, relying upon the plea agreement. (Cr. doc. 768 at 6-7.) He did not, however, argue that the

*Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel was not ineffective for failing to raise meritless objections or claims). Consequently, this claim fails.

B. **Prior Conviction**

In Ground 3, Perry contends that his sentence should be vacated because a prior conviction used to enhance it under U.S.S.G. § 4B1.1 resulted from an involuntary plea. (Doc. 3 at 4.) Specifically, a 1996 Bulloch County conviction for possession with intent to distribute drugs resulted from an "involuntary, unintelligent guilty plea." (*Id.* at 4-5.) He is currently attacking that conviction via state habeas proceedings. (*Id.* at 5.)

The claim is a non-starter. Not only has the conviction not been vacated (doc. 6-1), the sentencing enhancement required only two prior convictions of either a crime of violence or controlled substance offense, but Perry has three. (PSI ¶ 28 ("the defendant has been convicted of two prior felony controlled substance offenses . . . as well as a crime of violence"); PSI ¶ 32 (1996 Bulloch County conviction for sale of cocaine);

---

government breached its promise by failing to recommend the credit.

PSI ¶ 34 (possession with intent to distribute marijuana and cocaine); PSI ¶ 35 (felony obstruction involving "kicking" and "scratching" a police officer).) In other words, even if the Bulloch County conviction is vacated, Perry's sentencing range is unchanged. U.S.S.G. § 4B1.1 ("A defendant is a career offender if . . . the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.").

## III. CONCLUSION

For the foregoing reasons, Perry's § 2255 motion (doc. 1) should be **DENIED**. Additionally, Perry's request to proceed *in forma pauperis* (doc. 2) and for appointment of counsel (doc. 3 at 6) are **DENIED**, as are his motions for "summary of judgment" (doc. 9) and "to grant the petitioner's motion (doc. 5).[11] As noted above, however, his motion to amend his § 2255 motion (doc. 7) is **GRANTED**.

---

[11] In habeas corpus proceedings, counsel must be appointed for indigent movants when "the interests of justice so require." 18 U.S.C. § 3006A(a)(2). The Rules Governing Section 2255 Proceedings similarly require the appointment of counsel when the movant can show that appointment is necessary for effective discovery (Rule 6) or that a hearing is required (Rule 8). Perry's § 2255 motion should be dismissed. Accordingly, no further discovery or hearings are required. Additionally, the interests of justice do not mandate that movant be appointed counsel.

Applying the Certificate of Appealability ("COA") standards, which are set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And since there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this <u>31st</u> day of March, 2011.

<u>/s/ signature</u>
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT of GEORGIA